# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GINGER PATTON,** | : | **Civil No. 3:16-CV-2533** |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In the instant case we are called upon to review a decision by a Social Security Administrative Law Judge ("ALJ") that denied disability benefits to the plaintiff, Ginger Patton. At the time of her disability application, Ms. Patton was in her mid-40s, and claimed that she was wholly disabled due to lumbar disc disease and accompanying numbness and loss of sensation in her right leg and foot. Ms. Patton presented no medical opinion evidence supporting her claim of total and permanent disability, and there was countervailing opinion and clinical evidence which supported the opinion of the ALJ that Ms. Patton retained the residual functional capacity to perform a range of light work. In particular, this evidence revealed that Ms. Patton's condition had improved significantly following lumbar

1

surgery conducted in April of 2014, to a degree where substantial evidence indicated that she could now move and walk without pain or assistance.

Notwithstanding the evidentiary shortcomings in her presentation before the ALJ, Ms. Patton has appealed this adverse disability determination arguing: (1) that the ALJ erred in failing to find that she was *per se* disabled at Step 3 of the 5-step sequential process that governs Social Security disability claims; and (2) asserting that the ALJ's determination that she could perform a limited range of light work was factually unsupported in the administrative record. Given the deferential standard of review that applies to Social Security Appeals, which calls upon us to simply determine whether substantial evidence supports the ALJ's findings, we conclude that the ALJ's residual functional capacity determination in this case, and the decision that Patton was not disabled which flowed from that assessment of the medical evidence, are supported by substantial evidence. We also conclude that ample evidence supported the ALJ's Step 3 determination that Ms. Patton's medical condition was not *per se* disabling. Therefore, for the reasons set forth below, we recommend that the district court affirm the decision of the Commissioner in this case.

**II.    Statement of Facts and of the Case**

**A. Ginger Patton's Medical History**

Ginger Patton was 41 years old in August of 2011 when she began to experience severe lower back pain along with numbness and a loss of sensation in her right leg following an accident. On January 28, 2014, Patton protectively applied for Social Security Insurance benefits pursuant to Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. (Tr. 106-14.) In her disability application, Patton alleged that her disability beginning August 11, 2011, due to spinal stenosis (Tr. 46), and asserted that her degenerative lumbar spine condition prevented her from performing any job available in the national economy.

This claim came before the ALJ on a medical record which was mixed, equivocal and sparse in terms of corroborating details supporting this disability claim. Thus, an EMG study conducted on Patton in February of 2014 shortly before Patton underwent spinal surgery revealed no evidence of nerve root impingement or peripheral neuropathy. (Tr. 503.) Moreover, the medical record presented to the ALJ in this case reflected that Patton's medical condition improved significantly following lumbar surgery in April of 2014. In fact, Patton herself acknowledged this significant improvement to her physician stating that "as soon as she stepped out of the hospital [following this April 2014 surgery]: 'I lit up

right away!'" (Tr. 383.) This post-operative medical evidence revealed that by June 2014, following Patton's recovery period from her April 2014 back surgery, she was doing "extremely well." (Tr. 382, 388-89.) Her spinal nerve root symptoms had resolved (Tr. 382); she walked properly (Tr. 382); her gait, stance, and station were all normal; and she could walk on her heels and toes without difficulty. (Tr. 382.) In fact, her treating physician announced that he was "delighted with her response to surgery" and opined that Patton could possibly regain her driving privileges, which she lost due to having a numb foot. (Tr. 382.) By September of 2014, Patton's pain was reportedly "well controlled" with her medication regimen. (Tr. 317, 320).

Given these fairly benign medical records, on April 28, 2014, shortly after Patton underwent her back surgery, a state agency physician, Dr. Kurt Haas, opined that Patton was not disabled but could perform sedentary work. (Tr. 46-53.) Notably, there appear to be no countervailing medical opinions suggesting that Patton suffered from a permanent disabling medical condition as a result of her lumbar condition. Instead, the physician who performed Patton's back surgery pronounced himself "delighted with her response to surgery" and stated that she was doing "extremely well." (Tr. 382, 388-89.)

## B. **Agency Administrative Proceedings**

It was against this medical and factual backdrop marked by equivocal and sparse medical evidence that the ALJ conducted a hearing into Patton's disability application on August 6, 2015. (Tr. 25-42.) Patton and a vocational expert both testified at this hearing. (Id.) In the course of this hearing, the ALJ received testimony from the vocational expert identifying an array of jobs at both the sedentary and light exertional levels that Patton might be able to perform. (Id.)

On September 11, 2015, the ALJ issued a decision denying Patton's application for Social Security benefits. (Tr. 10-24.) In this decision, the ALJ first found that Patton had not engaged in gainful activity since January 28, 2014, the date of her application. (Tr. 15.) At Step 2 of the five-step sequential analysis process that applies to Social Security disability claims, the ALJ concluded that Patton had the following severe impairments: degenerative disc disease and neuropathy. (Tr. 15.) At Steps 3 and 4 of this sequential analysis, the ALJ concluded that none of Patton's impairments met a listing which would define her as *per se* disabled, (Tr. 15), but determined that Patton could not return to her past relevant work. (Tr. 18.)

The ALJ then concluded that Patton retained the residual functional capacity to perform a range of light work. (Tr. 16-18.) In reaching this conclusion, the ALJ

engaged in a careful analysis of the existing medical reports, which indicated that Patton's condition had improved significantly following her April 2014 back surgery. (Tr. 16-22.) As the ALJ explained:

> In sum, th[is] residual functional capacity assessment is supported by the following. Since she reported lower back pain for a good portion of time following her alleged onset date, she is limited to light work, which in effect, includes lifting no more than 20 pounds occasionally. Since records shortly after her back surgery by her specialists show an excellent recovery, the undersigned is not persuaded that she is currently limited to less than sedentary work. The undersigned also included several postural restrictions in the residual functional capacity as she alleges such activities can aggravate her lower back pain. Given specialist records post back surgery note a normal gait and an excellent recovery, the undersigned is no[t] persuaded that she needs restrictions in her ability to sit, stand, or walk. Since extreme cold could aggravate her pain, the residual functional capacity includes a restriction that she should avoid extreme cold. Also, she should avoid hazards due to some of the medications that she takes. She clearly had back problems and reported leg problems that led to her surgery. However, despite her allegations to the contrary, the medical records indicate surgery helped a lot and she improved. The fact that she was looking for work also suggests she herself capable of working. In fact, given that she looked for work that was within walking distance of her home at least raises the question that she wanted to be able to walk to work at times, which indicates she is considerably more functional than she testified to.

(Tr. 18.) Given this residual functional capacity assessment, consistent with the hearing testimony of the vocational expert, the ALJ determined that there were positions available to Patton in the national economy and denied her application for disability benefits. (Tr. 18-20.)

This appeal followed. (Doc. 1.) On appeal, Patton levels two substantive objections to this administrative agency determination. First, Patton argues that the ALJ erred in failing to find that she was *per se* disabled at Step 3 of the 5-step sequential process which governs Social Security disability claims. Second, Patton contends that the ALJ's determination that she could perform a limited range of light work was factually unsupported in the administrative record. The parties have fully briefed these issues and this case is ripe for resolution. For the reasons set forth below, we find, under the deferential standard of review which applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we recommend that the district court affirm that decision denying benefits in this case.

## III.  <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of the Administrative Law Judge and the Court</u>

Resolution of the instant Social Security appeal involves an informed consideration of the respective roles of two adjudicators–the Administrative Law Judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

Between steps 3 and 4, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused

by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i) (incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); Mason, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the

Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**B. <u>Substantial Evidence Supported the ALJ's Disability Determination in this Case</u>**

As we have noted, in this appeal Patton launches a two-fold attack upon this ALJ decision. First, she insists, notwithstanding the paucity of medical support for her claim of total disability, that the ALJ erred at Step 3 of this sequential analysis by failing to find that she met a disability listing and was *per se* disabled.

This argument warrants only brief consideration. Step 3 arguments by Social Security claimants must meet exacting legal standards. At step 3 of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the Social Security regulations, and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. §416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R.

§416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Here, Patton argues that the ALJ erred by failing to recognize that she met all of the criteria for disability under Listing 1.04, which relates to spinal disease and impairment. To meet Listing 1.04C, a plaintiff must produce evidence of (1) a spine disorder "resulting in compromise of a nerve root (including the cauda equine) or the spinal cord," with (2) "[l]umbar spinal stenosis resulting in pseudoclaudication," (a) "established by findings on appropriate medically acceptable imaging," (b) "manifested by chronic nonradicular pain and weakness," and (c) "resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04; see also Dorkoski v. Colvin, No. 3:14-CV-1198, 2015 WL 4409616, at *19-20 (M.D. Pa. July 16, 2015) (rejecting 1.04C argument where the diagnostic studies did not establish "a definite compromise of a nerve root or the spinal cord" and the "largely unremarkable" physical exams showed intact muscle strength, a normal gait, negative straight leg raising, and intact sensation). In this case the ALJ concluded that the medical evidence failed to establish that Patton's lumbar condition met or equaled listing 1.04. (Tr. 15.)

Recognizing that Patton bore the burden of proving that she met all of the criteria for this listing, we find that substantial evidence supported the ALJ's

conclusion that she had not met this precise and multi-facetted burden of proof. In particular, we are constrained to observe that the only medical opinion evidence in this case, the state agency physician opinion, concluded that she had not met this listing's requirements. (Tr. 46-53.) Moreover, the medical records did not support a finding of a compromised nerve root or spinal cord. Quite the contrary, a February 2014 EMG study revealed no nerve root impingement or neuropathy. (Tr. 503.) Moreover, the medical record presented to the ALJ reflected that Patton's medical condition improved significantly following April, 2014 lumbar surgery. In fact, Patton herself acknowledged this significant improvement to her physician stating that "as soon as she stepped out of the hospital [following this April 2014 surgery]; 'I lit up right away!'" (Tr. 383.) Indeed, the medical evidence revealed that by June 2014, following Patton's recovery period from her April 2014 back surgery, she was doing "extremely well." (Tr. 382, 388-89.) Her spinal nerve root symptoms had resolved (Tr. 382); she walked properly (Tr. 382); her gait, stance, and station were all normal; and she could walk on her heels and toes without difficulty. (Tr. 382.) In fact, her treating physician announced that he was "delighted with her response to surgery" and opined that Patton could possibly regain her driving privileges, which she lost due to having a numb foot. (Tr. 382.) By September of

2014, Patton's pain was reportedly "well controlled" with her medication regimen. (Tr. 317, 320.)

These medical records seemingly refute any claim by Patton that she was unable to ambulate. On this score:

> Inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of handheld assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1); see also Morrison v. Astrue, 355 F. App'x 599, 601 (3d Cir. 2009) (substantial evidence supported the ALJ's finding that the claimant did not ambulate ineffectively where testing showed a negative straight-leg raising testing, normal leg strength, and normal leg range of motion, as well as doctor's observations that the claimant walked without an assistive device). As the regulations explain,

> examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(2).

16

Here, Patton's treatment records documented that she was able to ambulate effectively and indicated that she did not suffer from nerve root impingement. These findings are fatal to a claim of *per se* disability at Step 3. Therefore, the ALJ properly relied upon this substantial body of evidence to conclude that Patton had not carried her burden of proof and persuasion that she suffered from a *per se* disabling spinal condition and that finding may not be disturbed upon appeal.

Patton also argues that the ALJ erred at Step 5 of this sequential analysis when the ALJ determined that Patton retained the ability to perform some light work and therefore could engage in substantial work in the regional and national economy. Like her Step 3 claims, this argument is unavailing.

With respect to these objections, our review of the ALJ's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). In this context, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v.

Perales, 402 U.S. 389, 401 (1971). Guided by this deferential standard of review, we also recognize that, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quotation omitted). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.

In the instant case, we submit that the thorough opinion of the ALJ meets all of these benchmarks prescribed by law. The ALJ's decision carefully and comprehensively documented Patton's medical conditions and treatment. On this score, the ALJ aptly noted that the doctors who cared for Patton often described her medical progress in positive terms. For example, the physician who performed Patton's back surgery reported that he was "delighted with her response to surgery" and stated that Patton was doing "extremely well." (Tr. 382, 388-89.)

Moreover, none of the other sparse medical opinions that are set forth in this administrative record compel a contrary result. Indeed, beyond a state agency physician opinion, issued immediately after Patton's surgery, which concluded at

that time that Patton was fit to perform sedentary work, there were no medical opinions stating that the plaintiff was permanently disabled following this successful back surgery.

Furthermore it is clear from the ALJ's decision that this medical evidence and physician opinion evidence received individualized consideration. Thus, the ALJ accepted some of this evidence, assigned limited weight to other evidence which was not supported by the medical record, and fashioned a residual functional capacity for Patton based upon the record as a whole. All of these assessments reflected a careful and measured approach to this issue, and in each instance we conclude that substantial, albeit disputed, evidence supported these findings by the ALJ.

This is all that the law requires in this setting, where we are called upon to review an administrative law judge's determination of a disability claim. Mindful of the fact that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Pierce v. Underwood, 487 U.S. 552, 565 (1988), and substantial evidence is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), we find that substantial evidence supported the ALJ's assessment of this medical

evidence, and the RFC determination which flowed from this medical review. Therefore, we recommend that the district court affirm this decision, weighing and assessing this medical evidence.

In sum, the ALJ's decision that Patton was not *per se* disabled, but rather could perform a limited range of light work was supported by substantial evidence in the medical record, and the decision to deny benefits to the plaintiff was thoroughly explained by the ALJ in the decision denying this application for benefits. Therefore, we recommend that the district court affirm the decision of the ALJ, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

## IV. <u>Recommendation</u>

Accordingly, for the forgoing reasons, IT IS RECOMMENDED that the district court AFFIRM the Commissioner's decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which

objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 12th day of October, 2017.


*s/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge